UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALEJANDRO MONROY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHUTTERFLY, INC.,<br><br>Defendant. | Civil Action No. 16-cv-10984<br><br>(JURY TRIAL DEMANDED) |

**CLASS ACTION COMPLAINT**

Plaintiff Alejandro Monroy, individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, against Shutterfly, Inc., and alleges as follows based on personal knowledge as to himself, on the investigation of his counsel and the advice and consultation of certain third-party agents as to technical matters, and on information and belief as to all other matters, and demands trial by jury:

**NATURE OF ACTION**

1. Shutterfly operates several e-commerce and social networking websites that offer a wide range of electronic and print-based photo storage and photo sharing services. Plaintiff, who has never used Shutterfly's services, brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Shutterfly in collecting, storing and using his and other similarly situated individuals' biometric identifiers[1] and biometric information[2] (referred to collectively at times as "biometrics") without informed written consent, in direct violation of BIPA.

---

[1] A "biometric identifier" is a personal feature that is unique to an individual, including "scans of face geometry," fingerprints, voiceprints, iris scans, among others.

2.  The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

3.  In recognition of these concerns over the security of individuals' biometrics – particularly in the City of Chicago, which was recently selected by major national corporations as a "pilot testing site[] for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias," 740 ILCS 14/5(b) – the Illinois Legislature enacted BIPA, which provides, *inter alia*, that a private entity like Shutterfly may not obtain and/or possess an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored, *see id.*; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used, *see id.*; (3) receives a written release from the person for the collection of his or his biometric identifiers or information, *see id.*; and (4) publishes publically available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information, *see* 740 ILCS 14/15(a).

4.  In direct violation of each of the foregoing provisions of §§ 15(a) and 15(b) of BIPA, Shutterfly is actively collecting, storing, and using – without providing notice, obtaining informed written consent or publishing data retention policies – the biometrics of all individuals,

---

[2] "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier that is used to identify an individual.

2

Shutterfly users and non-users alike, who appear in photographs uploaded to its service from within the state of Illinois.

5. Specifically, Shutterfly has extracted, collected and stored millions of "scans of face geometry" – highly detailed geometric maps of the face – from every individual who appears in a photograph uploaded to Shutterfly, including non-users of Shutterfly like Plaintiff. Shutterfly collects these scans of face geometry using sophisticated facial recognition technology that extracts and analyzes data from the points and contours of faces appearing in photos uploaded by its users. Each scan of face geometry is unique to a particular individual, in the same way that a fingerprint or voiceprint uniquely identifies one and only one person.

6. Plaintiff brings this action individually and on behalf of all others similarly situated to prevent Shutterfly from further violating the privacy rights of non-users of Shutterfly whose photos are uploaded to Shutterfly from within the state of Illinois, and to recover statutory damages for Shutterfly's unauthorized collection, storage and use of these individuals' biometrics in violation of BIPA.

## PARTIES

7. Plaintiff is a resident and citizen of Naples, Florida.

8. Shutterfly is a Delaware corporation with its headquarters and principal executive offices at 2800 Bridge Parkway, Redwood City, California 94065. Shutterfly is a citizen of the states of Delaware and California.

## JURISDICTION AND VENUE

9. Jurisdiction is also proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), because: (i) the proposed class consists of well over 100 members; (ii) the parties are minimally diverse, as members of the proposed class, including Plaintiff, are citizens of a state different from Shutterfly's home states; and (iii) the aggregate amount in controversy

exceeds $5,000,000.00, exclusive of interests and costs. There are likely millions of non-users of Shutterfly who had their photos uploaded to Shutterfly from within the state of Illinois. The estimated number of non-users of Shutterfly who were impacted by Shutterfly's conduct multiplied by BIPA's statutory liquidated damages figure ($5,000.00 for each intentional or reckless violation and $1,000.00 for each negligent violation) easily exceeds CAFA's $5,000,000.00 threshold.

10. This Court has specific personal jurisdiction over Shutterfly because: (i) Shutterfly offers its photo sharing and printing services to citizens of Illinois and ships its hard copy photographs and other products directly to its customers in Illinois; (ii) Shutterfly's alleged violation of BIPA, an Illinois statute, stems out of its contact with Illinois residents; (iii) Plaintiff's photograph was uploaded to Shutterfly in the state of Illinois by an Illinois resident; and (iv) Shutterfly collected Plaintiff's scan of face geometry from a photograph that Shutterfly knew was uploaded within Illinois, based on the Internet Protocol ("IP") address of the device that uploaded the photograph. For all of the above reasons, there is a strong interest in adjudicating the matter locally.

11. Venue is proper in this District because Shutterfly conducts business transactions in this District, and because the causes of action arose, in substantial part, in this District.

**FACTUAL BACKGROUND**

**I.      Biometric Technology Implicates Consumer Privacy Concerns**

12. "Biometrics" refers to unique physical characteristics used to identify an individual. One of the most prevalent uses of biometrics is in facial recognition technology, which works by scanning an image for human faces (or scanning an actual person's face), extracting a scan of face geometry from each face depicted (based on data associated with unique facial points and contours), and then comparing the resulting scan of face geometry against the scans of face geometry already stored in a "face database." If a database match is found, an individual may be identified.

13. The use of facial recognition technology in the commercial context presents numerous consumer privacy concerns. During a 2012 hearing before the United States Senate Subcommittee on Privacy, Technology, and the Law, Senator Al Franken (D-MN) stated that "there is nothing inherently right or wrong with [facial recognition technology, but] if we do not stop and carefully consider the way we use [it], it may also be abused in ways that could threaten basic aspects of our privacy and civil liberties."[3] Senator Franken noted, for example, that facial recognition technology could be "abused to not only identify protesters at political events and rallies, but to target them for selective jailing and prosecution."[4]

14. The Federal Trade Commission ("FTC") has raised similar concerns, and recently released a "Best Practices" guide for companies using facial recognition technology.[5] In the guide, the Commission underscores the importance of companies obtaining affirmative consent from consumers before extracting and collecting their biometric identifiers and biometric information from digital photographs.

15. As explained below, Shutterfly made no effort to obtain consent from anyone when it introduced its facial recognition technology. Not only do Shutterfly's actions fly in the face of FCC guidelines, they also violate individuals' privacy rights under BIPA.

---

[3] *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. on Privacy, Tech. & the Law of the S. Comm. on the Judiciary*, 112th Cong. 1 (2012) (available at https://www.eff.org/files/filenode/jenniferlynch_eff-senate-testimony-face_recognition.pdf).

[4] *Id.*

[5] *Facing Facts: Best Practices for Common Uses of Facial Recognition Technologies*, Federal Trade Commission (Oct. 2012), *available at* http://www.ftc.gov/sites/default/files/documents/reports/facing-facts-best-practices-common-uses-facial-recognition-technologies/121022facialtechrpt.pdf.

**II. Illinois's Biometric Information Privacy Act**

16. In 2008, Illinois enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA makes it unlawful for a company to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers[6] or biometric information, unless it first:

> (l) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15 (b).

17. Section 15(a) of BIPA also provides:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

18. As alleged below, Shutterfly's practices of collecting, storing and using, without obtaining informed written consent, the biometric identifiers and information of individuals appearing in photos uploaded within Illinois violate all three prongs of § 15(b) of BIPA. Shutterfly's failure to provide a publicly available written policy regarding its schedule and guidelines for the retention and permanent destruction of individuals' biometric identifiers and information also

---

[6] BIPA's definition of "biometric identifier" expressly includes "scans of face geometry." *See* 740 ILCS 14/10.

violates § 15(a) of BIPA. Shutterfly's violations of BIPA infringed on the right to privacy, expressly recognized by the Illinois legislature, of the individuals whose biometrics were illegally collected.

### III. Shutterfly Violates the Biometric Information Privacy Act

19. In a slideshow released by Shutterfly to accompany its Q2 2013 earnings conference call, Shutterfly claimed that, as of mid-2013, its users store "~20 billion photos" in the company's photo database, and that its facial recognition technology – at the time only utilized on a site called "ThisLife" – identifies people appearing in those photos by way of "photo ranking algorithms" and "advanced image analysis."[7] Shutterfly's website further explains that its photo storage and sharing platform "make[s] face tagging quick and easy with our facial recognition [technology],"[8] which "automatically recognizes faces (even babies and kids!) and puts them in groups to make it fast and easy for you to tag."[9]

20. Shutterfly claims that, as of December 31, 2015, it hosted approximately 28 billion photos, uploaded by roughly 9.8 million users.[10]

21. Throughout 2016, Shutterfly has been implementing its facial recognition technology from its ThisLife platform into its entire collection of websites. Shutterfly says that its facial recognition technology allows users to "[g]ather and organize [] photos and videos so [as to]

---

[7] *See* http://files.shareholder.com/downloads/SHUT/267971935x0x681010/36F643F1-5FC2-4E47-BFE3-AB8BBF7A91DE/Q2FY13_Earnings_Presentation.pdf (accessed June 12, 2015).

[8] *See* http://blog.thislife.com/post/65531549805/introducing-the-new-thislife-r-by-shutterfly (accessed June 12, 2015).

[9] *See* https://www.thislife.com/#features (accessed June 12, 2015).

[10] *See* http://files.shareholder.com/downloads/SHUT/2193147151x0x892644/7F50F500-2FCB-4291-8AD0-2655EE4191C0/Shutterfly_Needham_Conference_Presentation_May_2016_Final.pdf (accessed April 6, 2016).

7

easily find, share and transform them into personalized photo books, cards, home decor and gifts,"[11] but altogether fails to disclose to anyone that it collects and stores sensitive biometric identifiers in the process.

22. Unbeknownst to the average consumer, and in direct violation of § 15(b)(1) of BIPA, Shutterfly's proprietary[12] facial recognition technology locates each and every face appearing in each and every photo uploaded to its service from within the state of Illinois, and then, based on the unique points and contours of each face, extracts scans of face geometry (*i.e.,* biometric identifiers) from each person appearing in each photo, including non-users – all without ever informing anyone of this practice.

23. The "tag suggestion" feature of Shutterfly – which prompts a user to "tag" a pre-selected name to a particular face – works by comparing the scans of face geometry of individuals who appear in newly-uploaded photos against the scans of face geometry already saved in Shutterfly's face database. Specifically, when a Shutterfly user uploads a new photo, Shutterfly's sophisticated facial recognition technology collects a scan of face geometry from each person whose face is depicted in the photo, without regard for whether that person is a user of Shutterfly, and then compares that scan of face geometry against Shutterfly's face database. If no match is found, the user is prompted to "tag" (*i.e.*, identify by name) a person to that face, at which point the scan of face geometry and corresponding name identification are saved in Shutterfly's face database. However, if a scan of face geometry is generated that matches a scan of face geometry already in

---

[11] *See* http://files.shareholder.com/downloads/SHUT/2193147151x0x891688/1FFF6609-8464-48E8-9248-46D64EA621E1/Shutterfly_Conference_Presentation_May_2016.pdf (accessed April 6, 2016).

[12] Shutterfly holds several patents covering its facial recognition technology that detail its illegal process of collecting and storing scans of face geometry without obtaining informed written consent.

8

Shutterfly's face database, then Shutterfly suggests that the user "tag" to that face the name already associated with that face.

24. These unique biometric identifiers are not only collected and used by Shutterfly to identify individuals by name, but also to recognize their gender, age, race and location. Accordingly, Shutterfly also collects "biometric information" from individuals appearing in user-uploaded photos. *See* 740 ILCS 14/10.

25. In direct violation of §§ 15(b)(2) and 15(b)(3) of BIPA, Shutterfly never informed anyone appearing in photos uploaded within the state of Illinois of the specific purpose and length of term for which their biometric identifiers or information would be collected, stored and used, nor did Shutterfly obtain a written release from any of these individuals.

26. In direct violation of § 15(a) of BIPA, Shutterfly does not have written, publicly available policies identifying its retention schedules, or guidelines for permanently destroying individuals' biometric identifiers or information.

### IV. Plaintiff Alejandro Monroy's Experiences

27. Plaintiff is not a Shutterfly user and has never used Shutterfly's services in any way.

28. In or about June of 2016, Plaintiff discovered that a Shutterfly user in Illinois had uploaded a photograph of Plaintiff to Shutterfly using a computing device assigned to an Illinois-based IP address, thus indicating that the device was physically located within the state of Illinois at the time his photograph was uploaded.

29. The photograph of Plaintiff uploaded to Shutterfly was uploaded to Shutterfly on or about September 17, 2014 by a Shutterfly user who resided in Chicago, Illinois.

30. Upon upload of the photograph of Plaintiff, Shutterfly automatically located Plaintiff's face, analyzed the geometric data relating to the unique contours of his face and the

9

distances between his eyes, nose and ears, and used that data to extract and collect Plaintiff's scan of face geometry (*i.e.*, his biometric identifier).

31. Shutterfly then prompted the user who uploaded Plaintiff's photograph to "tag" Plaintiff's name to his face in the photo, in response to which the user entered his name, "Alex Monroy." After associating Plaintiff's name with Plaintiff's scan of face geometry, Shutterfly stored Plaintiff's scan of face geometry in its face database.

32. The scan of face geometry extracted, collected and stored from Plaintiff's photo were also used by Shutterfly to recognize Plaintiff's gender, age, race and location (*i.e.*, his biometric information).

33. Plaintiff never consented, agreed or gave permission – written or otherwise – to Shutterfly for the collection or storage of his scan of face geometry (*i.e.*, his biometric identifier) or his associated biometric information.

34. Further, Shutterfly never provided Plaintiff with, nor did he ever sign, a written release allowing Shutterfly to collect or store his scan of face geometry or his associated biometric information.

35. Likewise, Shutterfly never provided Plaintiff with an opportunity to prohibit or prevent the collection, storage or use of his scan of face geometry or his associated biometric information.

## CLASS ALLEGATIONS

36. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All individuals who are not users of Shutterfly and who had their biometric identifier, including scan of face geometry, collected, captured, received, or otherwise obtained by Shutterfly from a

        photograph uploaded to Shutterfly's website from within the state of Illinois.

The following are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Shutterfly, Shutterfly's subsidiaries, parents, successors, predecessors, and any entity in which a Shutterfly or its parent has a controlling interest (as well as its current or former employees, officers and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Shutterfly's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

      37.      **Numerosity**: The number of persons within the Class is substantial, believed to amount to millions of persons. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

      38.      **Commonality and Predominance**: There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

    (a)    whether Shutterfly collected or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

    (b)    whether Shutterfly properly informed Plaintiff and the Class that they collected, used, and stored their biometric identifiers or biometric information;

11

(c) whether Shutterfly obtained a written release (as defined in 740 ILCS 1410) to collect, use, and store Plaintiff's and the Class's biometrics identifiers or biometric information;

(d) whether Shutterfly developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometrics information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of its last interaction, whichever occurs first;

(e) whether Shutterfly used Plaintiff's and the Class's biometric identifiers or biometric information to identify them; and

(f) whether Shutterfly's violations of BIPA were committed intentionally, recklessly, or negligently.

39. **Adequate Representation**: Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Neither Plaintiff nor his counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiff is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

40. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with BIPA.

### FIRST CAUSE OF ACTION
### Violation of 740 ILCS 14/1, *et seq.*
### (On Behalf of Plaintiff and the Class)

41. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

42. BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b) (emphasis added).

43. Shutterfly is a Delaware corporation and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

44. Plaintiff and the Class members are non-users of Shutterfly who had their "biometric identifiers" collected and stored by Shutterfly's facial recognition software (in the form of their scans of face geometry extracted from digital photographs uploaded in the state of Illinois). *See* 740 ILCS 14/10.

45. Plaintiff and the Class members are non-users of Shutterfly who had their "biometric information" collected by Shutterfly (in the form of their gender, age, race and location) through Shutterfly's collection and use of their "biometric identifiers."

46. Shutterfly systematically and automatically collected, used, and stored Plaintiff's and the Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

47. In fact, Shutterfly failed to properly inform Plaintiff or the Class in writing that their biometric identifiers and/or biometric information was being collected and stored, nor did they inform Plaintiff and the Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and used, as required by 740 ILCS 14/15(b)(1)-(2).

48. In addition, Shutterfly does not publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiff or the Class members, as required by BIPA. *See* 740 ILCS 14/15(a).

49. Upon information and belief, Shutterfly is failing to store and protect from disclosure the biometric identifiers and biometric information of Plaintiff and the Class members by failing to exercise a reasonable standard of care within Shutterfly's industry, and in a manner at least as protective as the manner in which the business stores, transmits and protects other confidential and sensitive information.

50. Upon information and belief, Defendant is selling, leasing, trading or otherwise profiting from Plaintiff's and the Class members' biometric identifiers and biometric information.

51. By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Shutterfly violated the right of Plaintiff and each Class member to privacy in their biometric identifiers and biometric information, as expressly set forth by

the Illinois legislature in the enacting provisions of BIPA, 740 ILCS 14/1, *et seq*. Moreover, the conduct of Shutterfly as described herein has uniformly increased Plaintiff's and each Class member's risk of identity theft and financial harm.

52. On behalf of himself and the proposed Class members, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Shutterfly to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) statutory damages of $5,000.00 for each and every intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20; or, alternatively, (2) statutory damages of $1,000.00 pursuant to 740 ILCS 14/20(1) if the Court finds that Shutterfly's violations were negligent; and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alejandro Monroy, on behalf of himself and the proposed Class, respectfully requests that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing his counsel as Class Counsel;

B. Declaring that Shutterfly's actions, as set out above, violate BIPA, 740 ILCS l4/1, *et seq.*;

C. Awarding statutory damages of $5,000.00 for each and every intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or, alternatively, statutory damages of $1,000.00 pursuant to 740 ILCS 14/20(1) if the Court finds that Shutterfly's violations were negligent;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an order requiring Shutterfly to collect, store, and use biometric identifiers and biometric information in compliance with BIPA;

E. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.  Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.  Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury for all issues so triable.

Dated: November 30, 2016

Respectfully submitted,

By: /s/ Katrina Carroll

**LITE DEPALMA GREENBERG, LLC**
Katrina Carroll
kcarroll@litedepalma.com
Kyle A. Shamberg
kshamberg@litedepalma.com
Ismael T. Salam
isalam@litedepalma.com
211 West Wacker Drive, Suite 500
Chicago, Illinois 60606
Telephone: (312) 750-1265

**AHDOOT & WOLFSON, P.C.**
Tina Wolfson*
twolfson@ahdootwolfson.com
Robert Ahdoot*
rahdoot@ahdootwolfson.com
Meredith S. Lierz*
mlierz@ahdootwolfson.com
1016 Palm Avenue
West Hollywood, California 90069
Tel: (310) 474-9111; Fax: (310) 474-8585

**CAREY RODRIGUEZ MILIAN GONYA, LLP**
David P. Milian*
dmilian@careyrodriguez.com
Frank S. Hedin*
fhedin@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Tel: (305) 372-7474; Fax: (305) 372-7475

*Pro Hac Vice Application Forthcoming*

16

**Attorneys for Plaintiff**